*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2026 UT 24**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

JOHN ABU-ULBA,
*Appellant,*

*v.*

ANANDA SCIENTIFIC, INC., and MARK J. ROSENFELD,
*Appellees.*

No. 20240716
Heard January 26, 2026
Filed July 30, 2026[*]

On Certiorari to the Utah Court of Appeals

Third District Court, Salt Lake County
The Honorable Kent R. Holmberg
No. 190903831

Attorneys:

Troy L. Booher, Taylor P. Webb, Salt Lake City, Kenneth L. Reich,
Farmington, for appellant

Timothy R. Pack, Aaron D. Lebenta, Salt Lake City, for appellees

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which JUSTICE PETERSEN, ASSOCIATE CHIEF JUSTICE POHLMAN,
JUSTICE NIELSEN, AND JUDGE BELL joined.

JUSTICE HAGEN stepped down from the court before this case was
decided. DISTRICT COURT JUDGE MATTHEW L. BELL, having
reviewed the briefs and listened to the oral argument recording,
substituted for JUSTICE HAGEN and participated fully in this
decision.

---

[*] As of January 31, 2026, "The Supreme Court consists of seven
justices." UTAH CODE § 78A-3-101(1). Pursuant to Utah Supreme
Court Standing Order No. 18, this court sat and rendered judgment
in this matter as a division of five justices.

JUSTICE JORGENSEN and JUSTICE DENT became members of the Court after oral argument in this matter and did not participate.

———————

CHIEF JUSTICE DURRANT, opinion of the Court:

## INTRODUCTION

¶1 John Abu-Ulba founded a successful hemp company. Ananda Scientific, Inc. (Ananda), a start-up developing plant-based products, invited Abu-Ulba to join it as an expert in the field. Because of Ananda's start-up status, it paid Abu-Ulba less than market rate. So, to help make up the difference in salary, Ananda gave Abu-Ulba stock options secured by a promissory note.

¶2 When Abu-Ulba later discovered that Ananda had misrepresented key facts about its technology and operations, he sued under Utah's securities laws. The district court found Ananda liable. But when asked how damages should be calculated for the securities violation, Abu-Ulba said he did not know how to calculate the securities' value. So the district court identified three different measures of damages on its own, including measuring damages by the value of the promissory note (Note Theory).

¶3 The district court ultimately rejected the Note Theory as too speculative, and instead awarded damages based on the difference between Abu-Ulba's starting salary and the market rate for his position.

¶4 On appeal, Abu-Ulba challenged this calculation, asserting that the Note Theory was a better metric for damages. The court of appeals concluded that Abu-Ulba failed to preserve the Note Theory for appeal because he never asked the district court to adopt it. Abu-Ulba now challenges that ruling, arguing that the district court's decision to consider and reject the theory made it reviewable on appeal.

¶5 We disagree with Abu-Ulba. Though a district court's actions may preserve an issue despite the inaction of the appealing party, such actions must still comport with the principles that underlie preservation: judicial economy and fairness. And here the manner in which the Note Theory was addressed in the district court does not serve judicial economy or fairness. Accordingly, we affirm the court of appeals and hold that the Note Theory is unavailable to Abu-Ulba.

## BACKGROUND[1]

¶6 In 2005, Abu-Ulba started Miracle Source Food Group, which grew to be a highly regarded online hemp food company by 2012. Ananda is a start-up company developing plant-derived products. Having heard of Abu-Ulba's success in the field, Ananda expressed interest in working with him. Ananda represented that it had clinical data, which interested Abu-Ulba, so he agreed that collaborating would be mutually beneficial. The parties entered into a mutual non-disclosure agreement to facilitate information sharing.

¶7 During initial meetings, Ananda made several representations to persuade Abu-Ulba to work for Ananda. In reliance on these representations, Abu-Ulba continued to meet with Ananda. Eventually, Ananda formally offered Abu-Ulba a position as the Executive Vice-President and Director of Canadian operations, which Abu-Ulba accepted. Ananda later promoted Abu-Ulba to Chief Operating Officer.

¶8 As a start-up, Ananda did not have the funds to immediately pay Abu-Ulba a fair market rate in salary. Instead, Ananda paid Abu-Ulba at a rate of $5,000 a month and promised to increase payments to $10,000 a month when the company became more profitable. In addition, to help close the gap in compensation, Ananda provided Abu-Ulba 1,000,000 stock options, with 500,000 vesting immediately and 50,000 vesting quarterly. The options were to be provided to Abu-Ulba in exchange for signed, non-recourse promissory notes that Ananda would forgive whenever it would be most beneficial to the company tax-wise. Abu-Ulba could exercise these options at a

---

[1] This appeal challenges a damages calculation made following a bench trial. "When reviewing a bench trial, we view the facts in the light most favorable to the trial court's decision." *Gold's Gym Int'l, Inc. v. Chamberlain*, 2020 UT 20, n.1, 471 P.3d 170.

"strike price"[2] of $0.85 per share. This scheme enabled Abu-Ulba to receive the equivalent of founder's shares.[3]

¶9 Abu-Ulba exercised his options for 550,000 shares of Ananda stock at the strike price. He executed a promissory note (Note) for $467,500. As per the agreement, Abu-Ulba would not be obligated to repay the Note out of the proceeds of the sale; instead, the Note would be forgiven.

¶10 Soon, Abu-Ulba and Ananda's relationship unraveled. Abu-Ulba and potential investors travelled to Israel to conduct a due diligence investigation. There, he visited the labs where clinical trials were supposedly taking place and discovered the clinical trials had not been established. He also learned that Ananda was not under contract for a key technology as it had previously represented. Learning of the misrepresentations Ananda had made to induce him to join the company, Abu-Ulba pursued claims against the company, including a claim for unlawful offer or sale of securities under Utah Code section 61-1-1.

¶11 Under Utah Code section 61-1-1(2), it is unlawful for any person to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading." The plaintiff may recover "the consideration paid for the security, together with interest at 12% per year from the date of payment, costs, and reasonable attorney fees, less the amount of income received on the security."[4] Where the violation was

---

[2] A "strike price" is the "price for which a security will be bought or sold under an option contract if the option is exercised." *Price*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "strike price").

[3] "Founder shares (also called founder stock) are a type of equity, usually common stock, issued to the founding members of a company immediately or soon after it's incorporated. These shares are typically granted before any outside investors come on board and establish the initial ownership of the company." *Founder Shares*, CARTA (Aug. 16, 2024) (cleaned up), https://carta.com/learn/startups/equity-management/founder-shares/.

[4] UTAH CODE § 61-1-22(1)(b).

intentional or reckless, the consideration-paid award may be tripled.[5]

¶12  In a bench trial, the district court determined that Ananda had violated section 61-1-1 intentionally, and this is not in dispute. But, when calculating the damages, the district court concluded that neither party had developed any evidence at trial as to the "consideration paid for the securities" component. In fact, the record shows that when asked how to calculate damages, Abu-Ulba claimed it was "the value of his work for the company," but that the number was not a "strictly dollar and cents kind of compen[sation]" so he "ha[d] no way of figuring it out." Instead, on its own, the district court identified three different possible theories to determine the consideration paid.

¶13 One of these theories was the Note Theory, that is, calculating the damages, or consideration paid, by looking at the strike price Abu-Ulba paid when he exercised his option for 550,000 shares. The district court raised and promptly dismissed this theory. The court found the Note Theory to be too speculative and "weak evidence" of the consideration due. Specifically, the court found the strike price too speculative for three reasons. First, Abu-Ulba paid the strike price via the Note, "which specifies that the lender 'agrees that for payment of this Note, it will look solely to the [stock shares] to secure payment of this Note, and no other assets of [Abu-Ulba] shall be subject to levy, execution, or other enforcement procedures for the satisfaction.'" Second, the Note had no interest or payment terms. And third, the district court found that the repayment of the Note had been waived by Abu-Ulba. The court concluded that too many gaps were left for it to speculate on and fill in, so the strike price served as a poor metric for calculating the consideration paid.

¶14  Ultimately, the district court concluded that the difference between Abu-Ulba's starting pay of $5,000 and his final pay of $10,000 provided the most reasonable and concrete estimation of the value of Abu-Ulba's under-compensation. The district court additionally found that "there was credible evidence that [the pay gap] was likely to continue for at least two years." So the court calculated the consideration paid at $115,000 ($5,000 per month for twenty-three months). Under Utah Code section 61-1-22(2), the

---

[5] *Id.* § 61-1-22(2).

court then tripled this amount, resulting in Abu-Ulba being awarded $345,000.

¶15 In a posttrial motion, Ananda challenged the court's damages award. It argued that Abu-Ulba never disclosed that the value of his claim was his under-compensation in salary. Ananda argued that the district court violated rule 26(d)(4) of the Utah Rules of Civil Procedure, which it contended as prohibiting a party from relying on a theory it failed to disclose during discovery. Abu-Ulba took the position that this theory had been disclosed from the beginning of the case, citing to language in his complaint and in his summary judgment motion. Abu-Ulba also asserted his under-compensation theory during oral argument on Ananda's motion to amend the judgment. The court denied Ananda's challenge.

¶16 Abu-Ulba then appealed the district court's decision, arguing that the court should have valued the consideration paid as the face value of the Note, or $467,500. Abu-Ulba claimed this issue was preserved, citing the portion of the district court's findings and conclusions of law that considered different damages theories. Ananda argued that the issue was unpreserved because Abu-Ulba had not asked the district court to rely on the Note. In a reply brief, Abu-Ulba cited to *Fort Pierce Industrial Park Phases II, III, & IV Owners Ass'n v. Shakespeare*, for the proposition that an appellant has "no need to take separate action in order to preserve [a] question for appeal," when the "district court directly addresse[s]" that question.[6]

¶17 The court of appeals agreed with Ananda and found the issue to be unpreserved. It focused on a party's obligation to bring an issue to a court's attention to afford the court an opportunity to rule on it. The court of appeals did recognize that *Fort Pierce* had concluded that the "district court's decision to take up the question [on its own] conclusively overcame any objection that the issue was not preserved for appeal."[7] But it found that the district court did

---

[6] 2016 UT 28, ¶ 20 n.5, 379 P.3d 1218.

[7] *Abu-Ulba v. Ananda Sci., Inc.*, 2024 UT App 64, ¶ 34, 550 P.3d 480 (quoting *Fort Pierce*, 2016 UT 28, ¶ 13).

not "take up" or "rule on [the issue]."[8] The court deemed that step essential to sua sponte preservation by the district court.[9]

¶18 Further, focusing on our reliance on *Kell v. State*[10] in *Fort Pierce*,[11] the court of appeals held that overcoming any objection to preservation required a "thoroughgoing analysis."[12] And the district court in this case declined to use the Note Theory precisely because there was insufficient evidence to evaluate the metric.[13] So the court of appeals concluded that the method of preservation we relied upon in *Fort Pierce* did not apply in this case and the issue was not preserved.[14]

¶19 Abu-Ulba challenges the court of appeals' conclusion, and we granted certiorari to determine whether the court of appeals erred in deeming Abu-Ulba's Note Theory unpreserved.

## ISSUE AND STANDARD OF REVIEW

¶20 Abu-Ulba argues before us that the court of appeals erred in holding the Note Theory to be unpreserved. "We review the court of appeals' application of the preservation rule for correctness."[15] "This standard of review allows us to apply the appellate doctrines at issue here as if we were the first appellate court to consider them."[16]

## ANALYSIS

¶21 We begin by examining preservation and the principles that underlie our preservation doctrine: judicial economy and fairness. We then discuss the ways an issue can be preserved for appeal, including when preservation can occur through a district court ruling on an issue sua sponte. We next consider whether the

---

[8] *Id.* ¶ 39 (cleaned up).

[9] *Id.*

[10] 2012 UT 25, 285 P.3d 1133.

[11] 2016 UT 28.

[12] *Abu-Ulba*, 2024 UT App 64, ¶ 36 (cleaned up).

[13] *Id.* ¶ 39.

[14] *Id.*

[15] *State v. Johnson*, 2017 UT 76, ¶ 6, 416 P.3d 443.

[16] *Id.* (cleaned up).

district court's treatment of the Note Theory preserved it here, asking whether that conclusion would serve the principles of judicial economy and fairness. We hold it would not. Accordingly, we conclude that the court of appeals correctly deemed the Note Theory unpreserved.

I. BECAUSE TREATING THE DISTRICT COURT'S SUA SPONTE REVIEW OF THE NOTE THEORY AS PRESERVED WOULD NOT SERVE THE PRINCIPLES OF JUDICIAL ECONOMY AND FAIRNESS, THE NOTE THEORY IS UNPRESERVED

¶22   An appellate court will not consider an issue unless it has been preserved.[17] This preservation requirement is self-imposed, making it a requirement of prudence rather than jurisdiction.[18] "Consequently, we exercise wide discretion when deciding whether to entertain or reject matters that are first raised on appeal."[19]

¶23   The paramount considerations underlying the doctrine of preservation are the principles of judicial economy and fairness.[20] Judicial economy conveys our goal of alleviating the "heavy burden on appellate courts," by encouraging "parties to resolve their controversies at the trial level," and allowing "the trial judge to correct errors at the trial level."[21] Fairness requires giving the adverse party an opportunity to overcome an objection in the district court and, by extension, be prepared to rebut or defend the issue in an appellate court.[22]

¶24 Generally, we look at the actions of the parties to determine whether these principles have been met and, consequently, whether an issue was preserved for appeal. And, typically, a party meets these principles when the issue "has been presented to the district court in such a way that the court has an

---

[17] *In re Adoption of Baby E.Z.*, 2011 UT 38, ¶ 25, 266 P.3d 702.

[18] *Patterson v. Patterson*, 2011 UT 68, ¶ 13, 266 P.3d 828.

[19] *Id.*

[20] *Kell v. State*, 2012 UT 25, ¶ 11, 285 P.3d 1133.

[21] *Kelly v. Timber Lakes Prop. Owners Ass'n*, 2022 UT App 23, ¶ 32, 507 P.3d 357 (cleaned up).

[22] *Id.*

opportunity to rule on it."[23] "To provide the court with this opportunity, the issue must be specifically raised by the party asserting error, in a timely manner, and must be supported by evidence and relevant legal authority."[24]

¶25 But in *Kell v. State*, we considered the possibility that an issue may still be preserved even when the party itself did not raise the issue. There, the appealing party did not directly argue below the issue being challenged on appeal.[25] But the district court nevertheless considered and ruled on the issue.[26] We found that this sua sponte consideration still met the principles of preservation.[27] Namely, the district court clearly had the chance to rule on the issue, as the court did indeed rule on it.[28] In fact, the court conducted a thoroughgoing analysis of the issue.[29] And, as to fairness, the State itself argued that the ruling was not appropriate—a clear opportunity to counter the argument.[30]

¶26 We expanded upon *Kell* in *Fort Pierce Industrial Park Phases II, III & IV Owners Ass'n v. Shakespeare*. In *Fort Pierce*, "[n]either party had argued that restrictive covenants were disfavored."[31] But the district court itself did conclude that restrictive covenants were disfavored.[32] We held that the decision of the district court to take up the question overcame any objection that the issue was not preserved for appeal.[33]

---

[23] *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443 (cleaned up).

[24] *Id.* (cleaned up).

[25] 2012 UT 25, ¶ 10, 285 P.3d 1133.

[26] *Id.* ¶ 11.

[27] *Id.* ¶¶ 11–12.

[28] *Id.* ¶ 11.

[29] *Id.*

[30] *Id.* ¶¶ 9, 12.

[31] *Cove at Little Valley Homeowners Ass'n v. Traverse Ridge Special Serv. Dist.*, 2022 UT 23, ¶ 27, 513 P.3d 658 (cleaned up) (referencing *Fort Pierce Indus. Park Phases II, III, IV Owners Ass'n. v. Shakespeare*, 2016 UT 28, ¶ 13, 379 P.3d 1218).

[32] *Fort Pierce*, 2016 UT 28, ¶ 13.

[33] *Id.*

¶27 And more recently in *Cove at Little Valley Homeowners Ass'n v. Traverse Ridge Special Service District*, we once again considered whether a district court's consideration of an issue preserved it.[34] As in the previous two cases, we focused on whether the district court's ruling satisfied the underlying principles of preservation and found that it did not.[35] Namely, we focus on how, unlike *Kell*, the court considered the ultimate issue before it, but not the specific issue the appealing party wanted addressed.[36] We concluded that such a broad ruling did not further judicial economy as the district court did not actually rule on the issue.[37]

¶28 We do not hold there to be a categorical rule that every time a district court considers an issue sua sponte that issue is preserved for review. But, as the caselaw demonstrates, when the district court decides to take up an issue and that review satisfies the underlying preservation principles of judicial economy and fairness, then that issue may be preserved.

¶29 With this, we now turn to whether the court of appeals erred in concluding Abu-Ulba had not preserved the Note Theory. It is undisputed that neither party raised the issue to the district court. But, looking at the district court's findings of facts and conclusions of law, the court did consider the issue sua sponte. As the court of appeals recognized, this brings us squarely within the *Kell* and *Fort Pierce* jurisprudence. And as we have clarified, this requires us to consider whether the district court's consideration of the Note Theory satisfies principles of judicial economy and notions of fairness in order to conclude whether or not the district court's actions preserved the Note Theory for review.

*A. Judicial Economy*

¶30 Preservation serves judicial economy in a number of ways.[38] First, "requiring a party to raise an issue or argument in the trial court gives the trial court an opportunity to address the

---

[34] 2022 UT 23, ¶ 29.

[35] *Id.*¶ 29

[36] *Id.* ¶¶ 28–29.

[37] *Id.* ¶ 29.

[38] *See Patterson*, 2011 UT 68, ¶ 15.

claimed error, and if appropriate, correct it."[39] This helps to avoid retrials and appeals by addressing issues in the first instance.[40] Second, it encourages a party to "present his entire case and his theory of recovery to the trial court."[41] Notably, "judicial economy is most directly frustrated when an appellant asserts unpreserved claims that require factual predicates."[42] So preservation should be more strictly applied when the asserted issue depends on "factual questions whose relevance thereto was not made to appear at trial."[43]

¶31 We now consider whether the district court's ruling served judicial economy in these ways. From the record, the district court clearly recognized and intentionally addressed the specific issue Abu-Ulba now wishes to argue on appeal: the Note Theory. Namely, the district court laid out three theories for calculating damages because neither party had offered a theory. And the district court found that the Note Theory provided a poor path for determining damages, opting for an alternative theory.

¶32 Despite the court raising and analyzing the Note Theory, treating the Note Theory as preserved does not serve judicial economy. When the court walked through its reasoning for rejecting the Note Theory as a valuation metric, it rested its findings on the lack of evidence—the Note Theory being too speculative. Stated differently, the very reason the court dismissed the Note Theory was the poor factual development by the parties because the parties did not raise the issue themselves. Absent the development of facts on the issue, the district court felt ill-equipped to resolve the calculation based upon the strike price. We, then, are in an even worse position to consider the issue.

¶33 Treating the Note Theory as preserved doesn't satisfy judicial economy for two reasons. First, judicial economy seeks to create efficiency in appellate review.[44] The district court did not use the Note Theory because there was not enough factual

---

[39] *Id.* (cleaned up).

[40] *Id.*

[41] *Id.* (cleaned up).

[42] *Id.*

[43] *Id.* (cleaned up).

[44] *Id.*

development to accurately evaluate what damages would result from the Note Theory. If the district court did not have enough, we certainly do not at this secondary stage of review.

¶34  Second, and similarly, the inquiry is fact specific. As stated in *Patterson v. Patterson*, preservation should be most strictly applied when dealing with issues of fact.[45] Comparatively in *Kell*, the district court considered what "pending" means—which is a legal question.[46] And in *Fort Pierce*, the district court considered whether restrictive covenants are disfavored in the law, again a legal question.[47] Unlike here, those issues more easily lend themselves to appellate review and therefore more readily serve judicial economy.

*B.  Notions of Fairness*

¶35  With fairness, we focus on giving parties an opportunity to address the alleged error at the district court level.[48] We seek to avoid a party having to defend an issue on appeal that they had no opportunity to address at trial.[49] Fairness also works to prevent "a party from avoiding the issue at trial for strategic reasons only to raise the issue on appeal if the strategy fails."[50]

¶36  Here, fairness would not be served by treating the Note Theory as preserved. As the court of appeals pointed out, Abu-Ulba had several opportunities to ask the district court to award him damages based upon the Note.[51] But when the issue of how damages should be calculated was raised, Abu-Ulba made no effort to articulate a theory. In fact, when asked how he would value his damages, Abu-Ulba claimed it was "the value of his work for the company." But when asked how to calculate that number—a direct chance to argue the Note Theory—Abu-Ulba said he "ha[d] no way

---

[45] *Id.*

[46] *Kell*, 2012 UT 25, ¶¶ 11–12.

[47] *Fort Pierce*, 2016 UT 28, ¶ 13.

[48] *Patterson*, 2011 UT 68, ¶ 16.

[49] *Id.*; *see also In re Baby Girl T.*, 2012 UT 78, ¶ 42, 298 P.3d 1251 (Lee, J., dissenting).

[50] *Patterson*, 2011 UT 68, ¶ 16 (quoting *Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 20, 163 P.3d 615).

[51] *Abu-Ulba*, 2024 UT App 64, ¶ 38.

of figuring that out." The compensation was not a "strictly dollar and cents kind of compen[sation]." And the district court, in its findings of fact and conclusions of law, ultimately concluded that Abu-Ulba did not provide a means of calculating the consideration paid for the securities.

¶37 That left Ananda with no reason to understand the Note Theory as a live damages theory requiring objection. Preservation is grounded in fairness because it gives the opposing party notice of the issue and an opportunity to respond at the trial level. But Abu-Ulba did not present the Note as the measure of his damages when the district court asked him to identify one. He instead described his damages as "the value of his work for the company," and then stated that he had "no way of figuring that out." Those statements would not have alerted Ananda that Abu-Ulba was asking the court to calculate damages by reference to the Note. To the contrary, they suggested that Abu-Ulba was not advancing any calculable damages theory at all. So Ananda had no fair reason to object to the Note Theory, develop a response to it, or address whether the Note could provide a legally or factually proper measure of damages. Treating the theory as preserved in these circumstances would therefore undermine the fairness principle preservation is designed to protect: it would allow Abu-Ulba to rely on appeal on a theory that Ananda had no meaningful reason, or opportunity, to contest at trial.

## CONCLUSION

¶38 We hold that Abu-Ulba is precluded from relying on the Note Theory on appeal. While a district court's sua sponte ruling on an issue may preserve it for appeal, it still must comport with the principles underlying preservation. And here we hold that despite the district court considering the Note Theory, it did not do so in a way that serves judicial economy or fairness. We therefore affirm the court of appeals' decision.

_____